51 CCPA(Customs)

**S. STERN & COMPANY, Appellant,**

**v.**

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5118.**

United States Court of Customs
and Patent Appeals.

Dec. 12, 1963.

---

Leonard Feldman, New York City, for
appellant.

John W. Douglas, Asst. Atty. Gen.,
Andrew P. Vance, Chief, Customs Sec-
tion, for the United States.

John D. Rode, New York City, for As-
sociation of Customs Bar, as amicus
curiae.

Thomas J. McKenna, New York City, for New York County Lawyers' Ass'n, as amicus curiae.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

ALMOND, Judge.

Appellant, S. Stern & Company, a customs brokerage partnership, appeals from an order of the United States Customs Court, Third Division[1] declining to receive and recognize a proffered stipulation of submission subscribed on appellant's behalf by one of its partners, James B. Herzog. The stipulation was likewise subscribed by appellee. The trial court's decision was predicated on its determination *ex mero motu* that the appearance by or through a lay member of the partnership constituted the unauthorized practice of law. Motion for rehearing filed through counsel, appearing specially for the plaintiff-appellant solely for the purposes of said motion, was denied.[2] From the original order rejecting the stipulation and the order denying the motion for rehearing, one judge dissented. The court below did not reach the merits of the protest, the order reciting that it was "without prejudice to the resubmission of the stipulation by the appropriate authorized persons."

Our resolution of the issue here presented, viz., the authority of the court below to decline to receive and recognize the stipulation on the ground stated, requires that the cause be remanded to the trial court for such further proceedings as may be appropriate for disposition of the litigation on its merits.

The proffered stipulation submitted, subject to the approval of the court, is as follows:

"1. That the merchandise covered by the above protest consists of 750 sets of transistor radios and accessories, exported from Japan on or about December 25th, 1950, to New York on the S. S. YAMAWAKA MARU. The Special Customs Invoice covering the importation reflected price of $6.00 per unit, which included $5.50 per radio set, 30 cents per pair of earphones, and 20 cents per leather carrying case.

"2. That on the date of exportation the imported merchandise was subject to a minimum export price as established by the International Trade Bureau of the Ministry of International Trade and Industry (hereinafter referred to as MITI) as follows:

"$11.00 per radio set, 30 cents per set of earphones, 20 cents per leather case, 18 cents per set of batteries.

"3. That at the time of the importation herein involved it was the practice of the appraiser to appraise merchandise similar to that involved herein on the basis of the MITI check prices noted above.

"4. That on January 19th, 1961, a consumption entry, with duty calculated on the invoice values, was tendered to the Entry Division of the Collector's office and assigned No. 901169.

"5. That the Entry Division rejected the tender of the entry based upon the value indicated on the submitted Special Customs Invoice and required as conditions precedent to the acceptance of said entry that the entry reflect the MITI check prices noted above and that estimated duty computed at those MITI prices be deposited.

"6. That the importer thereafter added to the originally tendered entered value so as to reflect the MITI check prices indicat-

1. 48 Cust.Ct. 430, Abstract 66718.

2. 49 Cust.Ct. 167, Abstract 66881.

ed above, noting on the entry papers that

" 'Collector has refused entry based on invoice prices which imported claims to be dutiable value and on which value importer originally offered entry. Since importer needs the merchandise he is entering, under protest, at the value demanded by the Collector'

that estimated duties computed at said MITI check prices were deposited on January 25, 1961, and that on said date, consumption entry No. 901169 was accepted by the Entry Division of the Collector's office and a permit for delivery issued.

"7. That the protest be deemed submitted on this stipulation.

"8. That Plaintiff shall have thirty days after submission of this case in which to file a brief and that Defendant shall have thirty days thereafter in which to file a reply brief.

As noted hereinabove, the stipulation was signed on behalf of the United States and signed on appellant's behalf in the following manner:

"S. STERN, HENRY & CO.
Plaintiff
By James B. Herzog
Partner"

The protest was placed on the court calendar for a hearing in respect thereto. On the date of the hearing appearances were entered by Herzog and the appellee. The court called Herzog to the stand and proceeded to examine him under oath with respect to his role, and that of the partnership of which he was a member, in the filing and prosecution of the protest. The testimony thus elicited disclosed that Herzog is a customs broker holding an individual license; that he is a member of appellant partnership, which is also licensed; that he is not a member of the legal profession; that a customs broker "is the intermediary between the importer and the Customs"; that as a partner he participated with the Government in the preparation of the stipulation; that the partnership did not own the goods absolutely but was functioning "only in a representative capacity" for the ultimate consignee, the Amerex Trading Corporation; that in the event of a recovery of the refund sought, Stern, Henry & Co. would receive it and "remit all of it immediately to the Amerex Trading Corporation." Herzog testified that neither he nor the partnership would receive a fee for its or his services "of this kind." He asked leave to file a brief in this case and stated, "we submit on the basis of the stipulation." No owner's declaration was filed.

It appears that entry No. 901169 listed Amerex Trading Corporation as the principal for whose account appellant acted. In making entry, appellant filed an *order* bill of lading bearing the endorsement of the consignor thus qualifying under the administrative provisions of 19 U.S.C. § 1483, rendering the goods as the property of such *consignee*. Appellant noted the value of the goods on the entry document. The value indicated by appellant was rejected by the Collector of Customs as being too low. In order to secure release of the goods for the use of its principal, Amerex Trading Corporation, appellant was required to increase such value to the minimum export price established by the Ministry of International Trade and Industry. Thereupon, appellant filed protest in its own name under 19 U.S.C. § 1514 which protest forms the basis of the stipulation, hereinabove recited, culminating in the proceedings before the Customs Court seeking a refund of the alleged overpayment. These proceedings were instituted in the name of the appellant partnership S. Stern, Henry & Co. (now S. Stern & Company) by James B. Herzog, Partner, for a recovery for and on behalf of appellant's principal, Amerex Trading Corporation, the ultimate consignee.

The order of the Customs Court from which this appeal was taken recites:

"It having appeared to the court that one of the signers of the stipulation herein is not an attorney, but a business partnership, and is, therefore, not authorized to act in a representative capacity in the United States Customs Court (See memorandum attached) it is

"ORDERED that the stipulation is not approved.

"This order is without prejudice to the resubmission of the stipulation by the appropriate authorized persons."

The memorandum opinion of the majority of the court below is represented in essence by the following extracts therefrom:

"A party-plaintiff may be an individual, a corporation, or an association. The individual is the only party-plaintiff who can appear and manage his case *personally*. Neither a corporation nor a partnership can physically appear *personally*.

\*   \*   \*   \*   \*   \*

"Rule 9 [3] of the Customs Court permits parties *to appear personally and manage their cases*. It does not permit parties *to appear in a representative capacity and manage cases for others*, unless they are attorneys duly admitted under the rules of the court to practice at its bar." [Emphasis Customs Court.]

It is clearly manifest that Rule 9 of the Customs Court is wholly in consonance with 28 U.S.C. § 1654, which provides:

"§ 1654. Appearance personally or by counsel

"In all courts of the United States the parties may plead and conduct their own cases personally or by counsel, as, by the rules of such

courts, respectively, are permitted to manage and conduct causes therein."

As we proceed to express our views relative to the issue here presented, we deem it pertinent and proper to acknowledge the assistance afforded by the able arguments made and briefs filed by counsel for the appellant and appellee and those submitted, amici curiae, by the New York County Lawyers' Association and the Association of the Customs Bar. We deem it proper to note also that the role herein of the United States, appellee, is in essence that of amicus curiae.

At the threshold we take cognizance of the issue implied, if not raised, which poses the question of whether the order complained of is a final order or otherwise subject to appeal, or whether it is interlocutory and non-appealable. Appellee "is constrained not to oppose the appeal on the ground that the order is not subject to review," while appellant asserts the appealability of the order.

■■ It is well settled that consent of parties litigant is never sufficient to confer jurisdiction. It is the duty of the court to take cognizance, *ex mero motu*, of its power, or jurisdiction, to entertain causes which it is called upon to adjudicate. This court's jurisdiction extends only to review of "final decisions" of the court below. 28 U.S.C. § 1541.

■ As previously adverted to, the trial court did not reach the merits of the protest nor did it dismiss the action but retained jurisdiction of the cause for "resubmission of the stipulation by the appropriate authorized persons." The order, however, did encompass and make final disposition of an issue collateral to the merits of the main issue raised relative to the protest. The appellant appeared and sought to maintain his asserted right to proceed through representation by a lay partner. The order is a final adjudication in denial of an assert-

---

3. Rule 9 provides:
"Parties may appear and manage their cases personally or by attorney duly ad-

mitted under the rules of the court to practice at its bar."

ed right. The order precluded the appellant from proceeding further to secure adjudication of its claim embraced by the stipulation. In our view the order meets the pertinent tests relating to the review of collateral orders, Cohen et al. v. Beneficial Industrial Loan Corp. et al., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528, and constitutes a "final decision" within the purview of 28 U.S.C. § 1541.

In the view we take of the issue here presented, the questions succinctly posed for proper resolution are stated in the brief amicus curiae of the New York County Lawyers' Association. They are:

"1. Did the trial court commit error in finding on the basis of the record that appellant was acting solely in a *representative* capacity in this case?

"2. Is not the interpretation of a Rule of practice by the court which promulgated it conclusive, granted the absence of any invasion of the substantive rights of a litigant?"

The record before us reveals beyond peradventure of doubt, indeed by appellant's testimony under oath, that its appearance in the trial court for the purpose of maintaining the protest was solely in a representative capacity. The record conclusively negates appellant's contention that it appeared as the real party in interest and therefore qualified under Rule 9, supra, to manage the case of another entitled to "all of" the recovery sought "immediately." In response to inquiry directed by the court in lawful exercise of its inherent authority to secure compliance with its Rule, promulgated and extant, appellant disclosed itself as agent acting for its principal, the Amerex Trading Corporation.

It is true that appellant qualified as the consignee when it produced at the time of entry an order bill of lading duly endorsed by the consignor. That qualification, however, under 19 U.S.C. § 1483(1) was "For the purposes of this subtitle," which is "Subtitle IV.—Administrative Provisions," and not in diminution of the relationship of principal and agent existing between appellant and Amerex Trading Corporation.

Appellant's contention that it was acting for itself and not in a representative capacity is not consistent with the definition which appears in 19 CFR 31.3(a):

"(a) 'Customhouse broker' includes any person who, *acting on behalf of others*, transacts customs business * * *." [Emphasis supplied.]

■ We have examined the imposing array of cases relied upon by appellant. It would serve no useful purpose to analyze these cases in detail as they do not establish that a customhouse broker in the role of statutory consignee may not be recognized and treated as an agent when the purpose for so considering him is *in regulation of the practice of law* before the bar of the trial court. While the customhouse broker, in the absence of filing an owner's declaration, is *deemed* the owner for certain customs purposes, he is nevertheless an agent for purposes of conducting litigation and managing cases in court and must, therefore, be properly represented by counsel.

■ In consideration of the record and the arguments here presented, we are not persuaded as to the efficacy of appellant's contentions that it was the real party in interest and not an agent acting in a representative capacity with the right to appear in person and manage its own cause.

■ Implicit in this appeal is the right of a court to promulgate rules and to interpret them as adjuncts to the dispensation of justice and the orderly and expedient administration of its functions, with the limitation that substantial rights of litigants be not unduly circumscribed.

We consider this a right adhering in the very nature of our courts, affirmed in 28 U.S.C. § 2071, which provides:

"The Supreme Court and all courts established by Act of Con-

·gress may from time to time prescribe rules for the conduct of their business. Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed by the Supreme Court."

As we have already noted, the right of parties to plead their own cases is encompassed by the provisions of 28 U.S.C. § 1654. This right is recognized by the trial court in Rule 9 of the United States Customs Court. We agree with the trial court that permission to "appear personally and manage their cases" is so clear that it forecloses a construction that would permit parties to "appear in a representative capacity and manage cases for others," unless they are duly admitted members of the bar of the trial court. This interpretation is in harmony with the overwhelming weight of apposite authority.

Heiskell v. Mozie, 65 App.D.C. 255, 82 F.2d 861 (1936) dealt with 28 U.S.C. § 394, the predecessor provision of 28 U.S.C. § 1654, supra. The court said:

"We think the words 'the parties,' as used in the statute, mean the parties in interest—the real beneficial owners of the claims asserted in the suit, and by implication that it excludes agents and attorneys in fact and confines the representation, where the party whose rights are actually involved does not appear in person, to attorneys and counsellors at law.

\* \* \* \* \* \*

"While, therefore, the right to manage one's own cause personally is preserved and secured in all courts, federal and state, the right has never been enlarged to include —by appointment or substitution— an agent. The question is whether the person offering to conduct the litigation is the real party in interest. To determine this, courts look through the shadow to the substance. Here petitioner has no legal title to the property, nor any present equitable interest."

Suffice it to say, in our opinion the trial court has applied a reasonable interpretation in the application of Rule 9, supra, to the factual situation here presented. In so doing, it has followed precedent. Its decision should not be disturbed. We accordingly affirm that decision and remand the cause to the trial court for such further proceedings or orders as shall be appropriate.

Affirmed and remanded.